IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MECOM EQUIPMENT, LLC, a
California limited liability
company,

               Plaintiff,

      v.

HYUNDAI CONSTRUCTION EQUIPMENT
AMERICAS, INC. f/k/a HYUNDAI
CONSTRUCTION EQUIPMENT USA,
INC., an Illinois corporation
principally operating in the
State of Georgia,

               Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2:13-CV-01287-GEB-EFB

ORDER[*]

Plaintiff Mecom Equipment, LLC ("Plaintiff") moves for a preliminary injunction that would enjoin Defendant Hyundai Construction Equipment Americas, Inc. ("Defendant") "from terminating or otherwise modifying the discount pricing structure that [Defendant] has made available to [Plaintiff, which are] described in Exhibit B and Exhibit C to [Plaintiff's] Verified Complaint." (Pl.'s Not. of Mot. & Mot. for Prelim. Inj. ("Pl.'s Mot.") 1:9–11, ECF No. 15.) Defendant opposes the motion.

## I. BACKGROUND

"[Plaintiff] sells construction equipment manufactured by [Defendant] both at retail (as a dealer in [Plaintiff]'s own right) and

---

    [*]   This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

at wholesale (to [Plaintiff]'s sub-dealers). [Plaintiff] is engaged primarily in the retail sale of construction equipment, within the meaning of the California Equipment Dealers Act." (Verified Complaint ("VC") ¶ 27, ECF No. 1.) "[Plaintiff] has operated for many years as a dealer/distributor of [Defendant]'s construction equipment and, in doing so, built up a substantial amount of goodwill in regard to the equipment at issue." (Id. ¶ 28.)

"Plaintiff currently purchases equipment from [Defendant] pursuant to a written Master Distribution Agreement (see Exhibit A[,] . . . the 'Agreement'), as modified by a discount agreement executed with [Defendant] in 2010[,] which is effective at least through 2014 (see Exhibit B[,] . . . the 'Amendment.'" (Id. ¶ 3.) "The Amendment provides [Plaintiff] with discounts [that] allow [Plaintiff] to purchase Hyundai construction equipment at wholesale prices for subsequent re-sale by [Plaintiff]" so that Plaintiff and Defendant could "penetrat[e] markets in geographic areas where [Defendant] had not previously enjoyed substantial sales of its construction equipment." (Id. ¶¶ 4-5 (citing VC, Ex. B).) "In reliance on the Exhibit B discount structure being in effect at least through 2014 . . . , [Plaintiff] completely modified its business plans to specialize in Hyundai products and to service Hyundai equipment purchased by [Plaintiff]'s customers." (Id. ¶ 9.)

"[Defendant] issued written notice to [Plaintiff] dated May 22, 2013 that [Defendant] will unilaterally cease to honor the . . . Amendment as of July 1, 2013, even though the discount structure established by the Amendment was, by its terms, to be in effect throughout both 2013 and 2014." (Id. ¶ 12.) In that letter, "[Defendant]'s Sales Manager Kirk Gillette advised [Plaintiff] that . . . [Defendant] would only sell [Plaintiff] construction equipment at

'standard dealer purchase discounts . . . based on annual sales volume'–i.e., not at the discounts negotiated in the Exhibit B and Exhibit C Amendments to the underlying Agreement." (<u>Id.</u> ¶ 45.)

## II. LEGAL STANDARD

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, <u>by a clear showing</u>, carries the burden of persuasion.'" <u>Lopez v. Brewer</u>, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (per curiam)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>Winter v. Natural Res. Def. Council</u>, 555 U.S. 7, 20 (2008) (citing <u>Munaf v. Geren</u>, 553 U.S. 674, 689–90 (2008); <u>Amoco Prod. Co. v. Gambell</u>, 480 U.S. 531, 542 (1987); <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 311–12 (1982)).

Further, the Ninth Circuit's "'serious questions' approach survives <u>Winter</u> when [it is] applied as part of the four-element <u>Winter</u> test." <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1135 (9th Cir. 2011). In other words, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." <u>Id.</u>

## III. DISCUSSION

Plaintiff argues that Defendant did not have the right to "cease to honor the . . . Amendment as of July 1, 2013 ([since] the discount structure established by the Amendment was, by its terms, to be

3

in force at least throughout both 2013 and 2014." (Pl.'s Mot. 3:5–8
(citing VC, Ex. D; VC ¶¶ 12, 45).) Plaintiff contends that Defendant has
violated the California Equipment Dealers Act ("CEDA"), which
prescribes:

> Any dealer may bring an action against a supplier in any court of competent jurisdiction for damages sustained by the dealer as a consequence of the supplier's violation of any provisions of this chapter, together with costs and reasonable attorney's fees. The dealer may also be granted injunctive relief against unlawful termination, cancellation, nonrenewal, and change in competitive circumstances. The remedies set forth in this action shall not be deemed exclusive and shall be in addition to any other remedies permitted by law.

Cal. Bus. & Prof. Code § 22925. Plaintiff argues that it "now moves for
a Preliminary Injunction barring [Defendant] from altering the pre-
existing price structure," which "[Defendant] has agreed to keep . . .
in effect pending the hearing of [the] motion for preliminary
injunction." (Pl.'s Mot. 1:13–14, 1:11–13.)

**A. Statutory Injunctive Relief**

Plaintiff argues that

> in statutory enforcement cases such as this one, where the moving party has met the 'probability of success' prong of the preliminary injunction test, the court presumes the moving party has met the 'possibility of irreparable injury' prong because the passage of the statute is itself an implied finding by the legislature that violations will harm the public. Therefore, further inquiry into irreparable injury is unnecessary.

(Id. 5:19–24 (citing Miller v. Cal. Pac. Med. Ctr., 19 F.3d 449, 459
(9th Cir. 1994)).) Plaintiff further argues that it "need only establish
a likelihood of success on the merits to be entitled to an injunction"
since "[it] is entitled to statutory injunctive relief to prevent this

material change in the competitive circumstances of [Plaintiff]'s distribution agreement." (Id. 6:6–7, 1:9–11.)

Defendant counters that Plaintiff's reliance on <u>Miller</u> "is incorrect" since "the Ninth Circuit explicitly overturned <u>Miller</u> and found that 'the preliminary injunction standard articulated by the Supreme Court in <u>Winter</u> . . . applies.'" (Def.'s Opp'n 5:19–23 (quoting <u>Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200 AFL–CIO</u>, 611 F.3d 483, 490 (9th Cir. 2010)).) Defendant is correct. The Ninth Circuit states in <u>Small</u>: "Unlike under the <u>Miller</u> standard, we do not presume irreparable harm; rather, applying the <u>Winter</u> standard, we ask whether the failure to issue an injunction 'likely' would cause irreparable harm." <u>Small</u>, 611 F.3d at 494 (citing <u>McDermott ex rel. NLRB v. Ampersand Publ'g, LLC</u>, 593 F3d 950 (9th Cir. 2010)). "Under <u>Winter</u>, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." <u>Alliance for the Wild Rockies</u>, 632 F.3d at 1131 (citing <u>Winter</u>, 555 U.S. at 22).

**B. Irreparable Harm**

Plaintiff contends that "[Defendant]'s plan to discontinue making equipment available to [Plaintiff] pursuant to the Exhibit B discount structure will . . . irreparably harm [Plaintiff] in that [Defendant]'s conduct, if not enjoined by this Court, will destroy the goodwill currently enjoyed by [Plaintiff] in regard to its ongoing sale of Hyundai construction equipment to [Plaintiff]'s sub-dealers." (Id. 3:23–26.) Plaintiff also contends that "[Defendant] effectively seeks to strip [Plaintiff] of the goodwill that [it] has built up with its sub-dealers as a Master Distributor." (Id. 4:10–11 (citing VC ¶¶ 17–18).)

Defendant rejoins that "to meet its burden, [Plaintiff] must 'demonstrate, by the introduction of . . . evidence . . . that the harm

5

is real, imminent and significant, not just speculative or potential.'" (Id. 6:27-7:1 (quoting Volkswagen AG v. Verdier Microbus & Camper, Inc., No. C 09-00231 JSW, 2009 WL 928130, at *6 (N.D. Cal. Apr. 3, 2009)).) Defendant further argues that "[t]he claimed 'threat [of irreparable harm] must be shown by probative evidence and conclusory affidavits are insufficient.'" (Id. 7:7-8 (quoting Mandrigues v. World Savings, Inc., No. C 07-4497 JF (RS), 2009 WL 160213, at *3 (N.D. Cal. Jan. 20, 2009) (citation omitted)) (second alteration in original).)

"[I]ntangible injuries, such as damage to . . . goodwill[] qualify as irreparable harm." Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 2001). "Although the loss of goodwill and reputation are important considerations in determining the existence of irreparable injury, there must be credible . . . evidence that such damage threatens Plaintiff['s] business with termination." Dotster, Inc. v. Internet Corp. for Assigned Names & Numbers, 296 F. Supp. 2d 1159, 1163-64 (C.D. Cal. 2003) (citing Am. Passage Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470, 1473 (9th Cir. 1985); Metromedia Broad. Corp. v. MGM/UA Entm't Co., Inc., 611 F. Supp. 415, 426 (C.D. Cal. 1985)). "Mere financial injury . . . will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation." Goldie's Bookstore, Inc. v. Superior Court of State of Cal., 739 F.2d 466, 471 (9th Cir. 1984) (citing Sampson v. Murray, 415 U.S. 61, 90 (1974); L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202 (9th Cir. 1980)). Further, "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." Caribbean Marine Servs. Co., Inc. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988) (citing Goldie's Bookstore, Inc., 739 F.2d at 472)).

Plaintiff attaches declarations in support of its position that it will suffer irreparable harm absent an injunction. Bill Zehender ("Zehender"), a managing member of Plaintiff, declares: "Any action by [Defendant] to unilaterally terminate the Exhibit B discount structure will also irreparably harm [Plaintiff] because [Plaintiff] will be deprived of the intangible value of all of [Plaintiff]'s sub-dealer recruitment efforts" and "will, likewise, destroy the goodwill built up by [Plaintiff] over many years of service as a Master Distributor for [Defendant] (e.g., with [Plaintiff]'s multiple sub-dealers)." (Zehender Decl. ¶¶ 19-20, ECF No. 15-3.) Plaintiff also submits declarations from principals at four separate sub-dealers with whom Plaintiff does business, in which each principal declares: "[I]f [sub-dealer] was able to purchase Hyundai-brand equipment from [Plaintiff] only at prices which are higher than the prices charged to Hyundai dealers who make purchases directly from Hyundai, [sub-dealer] would obviously cease buying Hyundai-brand equipment from [Plaintiff]." (Declaration of Mark Lawrence ¶ 4, ECF No. 23-2; Declaration of Brant Ambrose ¶ 4, ECF No. 23-3; Declaration of Dick Lindsay ¶ 4, ECF No. 23-4; Declaration of Walter Azevedl ¶ 4, ECF No. 23-5.)

These declarations evince that Plaintiff will likely lose business from its sub-dealers, and the associated goodwill of that business, if Defendant is not enjoined. However, Plaintiff avers in its Verified Complaint that "[i]mmediately prior to filing this [action, Plaintiff] filed its Demand for Arbitration with the AAA," and there is no indication from any sub-dealer principal that any sub-dealer would cease doing business with Plaintiff if Plaintiff prevails in the arbitration proceeding. (VC ¶ 23.) Therefore, Plaintiff's argument that it will lose the sub-dealer business on a permanent basis has not been

shown to "constitute irreparable injury sufficient to warrant granting a preliminary injunction." Caribbean Marine Servs. Co., Inc., 844 F.2d at 674.

Further, Plaintiff alleges that "[it] sells approximately 90% of the equipment purchased from [Defendant] to retail customers." (VC ¶ 27.) Plaintiff also avers in its Verified Complaint that "[it] would be able to continue to make sales of equipment at retail to its own customers." (Pl.'s Reply 20:1–2.) Therefore, at most, Plaintiff stands to lose 10 percent of its business related to Defendant's equipment if Defendant alters its discount structure. However, Plaintiff has provided no "credible . . . evidence that such damage threatens Plaintiff['s] business with termination." Dotster, Inc., 296 F. Supp. 2d at 1163–64.

Plaintiff has also failed to provide evidence concerning what percentage of Plaintiff's overall business is involved with the sale of Defendant's equipment to sub-dealers. Defendant submitted evidence showing that "the annual impact of the change from the special discount program under the Addendum to the normal dealer discount program is less than 10% of [Plaintiff]'s total annual sales." (Decl. of Kirk Gillette ("Gillette Decl.") ¶ 18, ECF No. 20-3.) Defendant bases this calculation on the following information: (1) "[i]n the 12 months from July 1, 2012 to June 30, 2013, [Plaintiff] purchased 63 pieces of new equipment from [Defendant] at a total cost of approximately $8.5 million," (Gillette Decl. ¶ 15); (2) "[h]ad the same purchases been made under the normal dealer discount program set forth in [Defendant]'s May 22, 2013 letter to [Plaintiff], [Plaintiff] would have paid [Defendant] approximately $10 million[, resulting in] an approximate $1.5 million difference," (id.); (3) Plaintiff's "Business Plan [for 2013] sets forth [Plaintiff]'s sales from all sources for 2012" with total sales of

1  $15,907,000. (Id. ¶ 17.) Therefore, the discount pricing difference
2  represents only 9.43 percent of Plaintiff's total sales.

3        Although "[m]ere financial injury . . . will not constitute
4  irreparable harm," Goldie's Bookstore, Inc., 739 F.2d at 471, "[t]he
5  threat of being driven out of business is sufficient to establish
6  irreparable harm." L.A. Mem'l Coliseum Comm'n, 634 F.2d at 1203. "The
7  majority of district courts addressing this issue have concluded that a
8  loss of at least thirty percent of a plaintiff's business can constitute
9  irreparable harm." Phany Poeng v. United States, 167 F. Supp. 2d 1136,
10 1143 (S.D. Cal. 2001) (emphasis added) (collecting cases); see also
11 Blind Doctor Inc. v. Hunter Douglas, Inc., No. C-04-2678 MHP, 2004 WL
12 1976562, at *2 (N.D. Cal. Sept. 7, 2004) (denying motion for preliminary
13 injunction "requiring [defendant] to continue making its products
14 available to [plaintiff] for retail sale" when "statistical evidence
15 [showed] that [defendant's] products accounted for only 37 percent of
16 [plaintiff's] sales"); RasterOps v. Radius, Inc., 861 F. Supp. 1479,
17 1497 (N.D. Cal. 1994) ("[T]he court finds it very difficult to
18 understand how a product group that accounts for a relatively small
19 percentage of the company's sales [(about five to nine percent)] . . .
20 could possibly play such a vital role in [plaintiff's] future."); Dimare
21 Fresh, Inc. v. Sun Pac. Mktg. Coop., Inc., No. CIV-F-06-1265 AWI SMS,
22 2006 WL 2686969, at *3 (E.D. Cal. Sept. 19, 2006) (finding no showing of
23 irreparable injury when plaintiff "ha[d] not stated what percentage of
24 its total revenues (as opposed to percentage of tomato business) would
25 be impacted"); Fin. & Sec. Prods. Ass'n v. Diebold, Inc., No. C 04-04347
26 WHA, 2005 WL 1629813, at *6 (C.D. Cal. July 8, 2005) (finding no
27 irreparable injury when plaintiff's evidence of harm to third parties
28 amounted to only "a small percentage of their overall business").

1    Plaintiff also provides additional averments from Zehender,
2    which also fail to demonstrate irreparable injury. For example, some of
3    his averments demonstrate that damages would provide adequate relief:
4    "If [Defendant] is allowed to alter the discount structure, [Plaintiff]
5    will be forced to buy equipment from [Defendant] at markedly greater
6    prices, such that [Plaintiff] will be much less competitive price-wise."
7    (Zehender Decl. ¶ 16); "The prices at which [Plaintiff] purchases
8    equipment from [Defendant] will rise by an average of approximately
9    14-15% if [Defendant] is unilaterally allowed to abandon the Exhibit B
10   discount schedule bargained for by [Plaintiff]." (id.); "[Plaintiff]
11   will have a dramatically higher carrying cost on any inventory that
12   [Plaintiff] purchases from [Defendant]." (Zehender Supplemental Decl.
13   ¶ 23, ECF No. 23-1); "[Plaintiff] will be forced to liquidate millions
14   of dollars of excess inventory to avoid floor-plan interest charges."
15   (Id. ¶ 14.)

16   Zehender also makes other statements that lack evidentiary
17   support: "[Plaintiff]'s sub-dealers [who cease] mak[ing] wholesale
18   purchases from [Plaintiff] . . . will instead purchase Hyundai equipment
19   directly from Hyundai." (Zehender Decl. ¶ 16); "[Defendant]'s conduct
20   would disrupt the retail distribution of Hyundai construction equipment
21   within the entire geographic area served by [Plaintiff] and
22   [Plaintiff]'s sub-dealers, irreparably harming [Plaintiff]'s image with
23   end users across [Plaintiff]'s geographic territory." (id. ¶ 21); "[T]he
24   contractual discount structure [changes] would put [Plaintiff] virtually
25   out of the market and force [Plaintiff] to completely change [its]
26   business model. . . . [Plaintiff]'s ability to continue as a viable
27   entity is far from certain. In short, the amount of damage this change
28   will have on [Plaintiff] is virtually impossible to calculate."

(Zehender Supplemental Decl. ¶ 2); "The legal exposure alone (as a result of our potential violation of the sub-dealer's CEDA rights, and the ability of those dealers to pursue damages AND attorneys' fees against us) is daunting." (Id. ¶ 24.)

These averments are

> inadmissible conclusions of [Plaintiff's] own executive[] that if [a preliminary injunction does not issue] Plaintiff['s] goodwill and [image] will be damaged due to an anticipated decrease in sales. Such conclusory statements cannot support a finding of irreparable injury for the issuance of a preliminary injunction. Am. Passage Media Corp.[ v. Cass Commc'ns, Inc.], 750 F.2d [1470,] 1473 [(9th Cir. 1985)] (declarations of plaintiff's executives detailing the disruptive effect of defendant's exclusive contracts on plaintiff's business could not support the issuance of a preliminary injunction because they were "conclusory and without sufficient support in facts[]"); Goldie's Bookstore, Inc., [739 F.2d at 472] (reversing issuance of preliminary injunction where district court had determined that plaintiff "would lose goodwill and 'untold' customers" because the finding was not based on any factual allegations and was speculative).

Dotster, Inc., 296 F. Supp. 2d at 1164 n.2 (first citation omitted).

For the stated reasons, Plaintiff has not demonstrated that it will suffer irreparable harm absent the issuance of a preliminary injunction.

**IV. CONCLUSION**

Therefore, Plaintiff's motion for a preliminary injunction is DENIED.

Dated:  August 8, 2013

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge